Leontae C. HILL, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 64874.

Missouri Court of Appeals,
Western District.

Jan. 17, 2006.

Jeannie M. Willibey, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before: ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JJ.

ROBERT G. ULRICH, P.J.

Leontae Hill appeals from the judgment of the motion court denying his Rule 29.15 motion for postconviction relief without an evidentiary hearing. Mr. Hill sought to vacate his convictions for four counts of assault of a law enforcement officer in the first degree, section 565.081, RSMo 2000, and four counts of armed criminal action, section 571.015, RSMo 2000, and consecutive sentences of life imprisonment for

each count of assault of a law enforcement officer and fifteen years imprisonment for each count of armed criminal action. Mr. Hill claims that the motion court erred in denying his Rule 29.15 motion because (1) his convictions and sentences for armed criminal action charged in Counts 4, 6, and 8 violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and (2) he was denied effective assistance of counsel when counsel failed to call a witness to testify and failed to request the submission of instructions on the lesser included offenses of assault in the second degree and assault of a law enforcement officer in the second degree.

## Facts[1]

At 12:30 a.m. on January 1, 2000, Officers Steven Walker, Anthony White, Jeff Colvin, and Leon Bradley were on patrol in a marked police car. (Normally, only two officers ride in a car.) After hearing automatic gunfire, they drove toward its source, where they saw two men, Leontae Hill and Noah Sanders, on the steps of an apartment building at 2603 East 29th Street in Kansas City. Brandon Vaughn was a third person present.

The officers shined a light on Mr. Hill and Mr. Sanders, whose prior attempts to shoot-out streetlights had drawn the officers' attention. Mr. Hill then told Mr. Vaughn, "If they ride back through I'm going to get them," and he told Mr. Sanders that his New Year's resolution was to shoot the police. Mr. Sanders told him not to do this, but Mr. Hill ignored him. When the police circled back, Mr. Hill fired his automatic weapon some thirty times at the car, hitting Officer Walker in

the head and Officer Colvin in the neck. The police car was extensively damaged but continued on.

After he finished firing, Mr. Hill said, "I think I hit them."

Officer Colvin drove the car two blocks away from the scene of the shooting and stopped. En route, dispatch was called. Soon thereafter, a tactical response team arrived at the scene of the shooting.

Without a warrant, the team members went from door to door, knocking and asking those who responded whether they were injured and whether they knew anything about the shooting. Officer Williams, the team's point man, knocked on the door of the apartment in which Mr. Hill was found. A young woman, Raphaela Moore, opened the door, and Officer Williams told Ms. Moore "we would like to come in and speak to [you]." Ms. Moore invited the police inside. Once inside, they saw, in addition to Ms. Moore, a young man lying on a couch in the front room. The only light in the apartment was the flickering of a TV screen.

Officer Williams asked Ms. Moore for her consent to search the apartment. She said that she was only a visitor and that they should ask the tenant, who was in the first bedroom. She also said that the only people in the apartment were she and the young man, the tenant and the tenant's children.

While moving down the hallway toward the first bedroom, the police saw movement in the back bedroom, which they then entered. Mr. Hill was lying in a bed in a fetal position facing away from the door, and Mr. Vaughn was crouched beside

---

1. Because the standard under which this court views the facts is the same as for a direct appeal, the facts of the direct appeal as set out in the unpublished memorandum that accompanied the order affirming the convic-

tions and sentences, *State v. Hill,* 114 S.W.3d 310 (Mo.App. W.D.2003), are repeated here without quotation marks with only minor stylistic changes. Procedural developments since the direct appeal are also added.

the bed, trying to hide. Officer Williams ordered both men to stand up. When Mr. Hill stood up, the police saw an automatic weapon lying on the bed. Both men were taken into custody, and their weapons— Mr. Vaughn had a .38 handgun—were confiscated.

Mr. Hill was charged by indictment with four counts of assault of a law enforcement officer in the first degree and four counts of armed criminal action. The jury returned guilty verdicts on all of the counts, and the trial court sentenced Mr. Hill to consecutive terms of life imprisonment for each count of assault of a law enforcement officer and fifteen years imprisonment for each count of armed criminal action. Mr. Hill's convictions and sentences were affirmed in his direct appeal. *State v. Hill,* 114 S.W.3d 310 (Mo.App. W.D.2003).

Thereafter, Mr. Hill filed his *pro se* Rule 29.15 motion for postconviction relief. Appointed counsel filed an amended motion on Mr. Hill's behalf raising claims of ineffective assistance of trial counsel. The motion court denied Mr. Hill's motion without an evidentiary hearing. This appeal followed.

### Standard of Review

■  Appellate review of the denial of a postconviction motion is limited to determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Morrow v. State,* 21 S.W.3d 819, 822 (Mo. banc 2000). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, an appellate court is left with the definite and firm impression that a mistake has been made. *Morrow,* 21 S.W.3d at 822.

### I.  Double Jeopardy

■  In Mr. Hill's first point on appeal, he claims that the motion court clearly erred in denying his Rule 29.15 motion for postconviction relief because the trial court exceeded its jurisdiction in entering convictions and sentences for armed criminal action as charged in Counts 4, 6, and 8. Specifically, Mr. Hill contends that those convictions and sentences violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because Counts 4, 6, and 8 charged identical offenses to the offense charged in Count 2.

Count 1 charged assault of a law enforcement officer in the first degree alleging that Mr. Hill attempted to kill or to cause serious physical injury to Anthony White, a law enforcement officer, by shooting at him. Count 2 charged armed criminal action specifically alleging:

the defendant committed the felony of Assault of Law Enforcement Officer First Degree charged in Count 1, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of Assault of Law Enforcement Officer First Degree by, with and through the use, assistance and aid of a deadly weapon.

Count 3 charged assault of a law enforcement officer in the first degree regarding Officer Jeffrey Colvin; Count 5 charged assault of a law enforcement officer in the first degree regarding Officer Leon Bradley; and Count 7 charged assault of a law enforcement officer in the first degree regarding Officer Steven Walker. Counts 4, 6, and 8 charged armed criminal action using the identical language as Count 2, referencing the assault of a law enforcement officer charge in Count 1. Mr. Hill contends that because Counts 2, 4, 6, and 8 all charged that he committed the felony charged in Count 1 through the use of a deadly weapon, he was "twice put in jeopardy" for the same offense.

The State argues that this claim is waived because Mr. Hill failed to raise it in the trial court, on direct appeal, or in his motion for postconviction relief and raises it for the first time in this appeal. The State further contends that even if the claim was not waived, Mr. Hill was not convicted of four counts of armed criminal action for the assault of Officer White because the jury instructions for each of the verdict directors for armed criminal action referenced a separate assault count.

The case of *State v. Frances,* 51 S.W.3d 18 (Mo.App. W.D.2001), controls. In *Frances,* the defendant was convicted of two counts of first-degree assault, one count of second-degree assault, and three counts of armed criminal action for shooting Gregory Watson, Stanley Johnson, and Jonathon Barnes. *Id.* at 19. All three armed criminal action counts in the original indictment and the amended information incorporated and referred to the first degree assault against Gregory Watson, which was charged in count 1. *Id.* at 20. The case was tried to the court, and the court found the defendant guilty of all six counts. *Id.* The court's judgment did not set out the counts in detail but instead referred to the amended information and described the counts as either assault in the first degree or armed criminal action. *Id.*

On appeal, the defendant challenged two of the three convictions for armed criminal action contending that all three charges of armed criminal action were identical in that all related specifically to the shooting of Gregory Watson. *Id.* at 19–20. He claimed that his three convictions for the same offense violated his rights under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. *Id.* at 20. The State argued that the erroneous cross-referencing was merely a typographical error in the information that

did not prejudice the defendant because the record taken as a whole, including statements made by the prosecutor in opening statements and closing arguments, revealed that the prosecutor intended to charge the defendant with three separate counts of armed criminal action related to three separate assaults. *Id.* at 21.

Despite not raising his double jeopardy claim in the trial court, this court reviewed the claim citing *Hagan v. State,* 836 S.W.2d 459, 461 (Mo. banc 1992), which mentioned the jurisdictional nature of such a claim because the right to be free from double jeopardy is a constitutional right that goes to the power of the State to bring a defendant into court to answer a charge. *Frances,* 51 S.W.3d at 21. This court rejected the State's argument of mere typographical error stating:

> The [S]tate forgets that a transcript of the opening statement and closing argument will not be part of the documents reflecting this conviction. While a discerning reader might *assume* that counts 4 and 6 contain typographical errors, there remains confusion because of the normal assumption that the charges express exactly what the [S]tate intended to charge. We cannot say that the [S]tate's view is the only reasonable construction. Second, since one of the reasons for accuracy and sufficiency in pleadings is to avoid conflict with provisions against double jeopardy, we find it unacceptable to simply ignore the appearance that the defendant's double jeopardy rights have been violated.

*Id.* 23. This court vacated the two convictions for armed criminal action because the information and the judgment did not reflect that counts 4 and 6 were based on different incidents and no part of the record was attached to the judgment to show this. *Id.* at 23–24.

As in *Frances,* all four counts of armed criminal action charged in the indictment in this case referred to the shooting of Officer White. Furthermore, the judgment in this case did not set out the counts in detail but instead described the counts as either assault of a law enforcement officer in the first degree, a class A felony, or felony armed criminal action. Nothing was attached to the judgment to show that the counts were based on different incidents.

The State admits that each armed criminal action count of the indictment referenced the assault of a law enforcement officer charge in Count 1 relating to the shooting of Officer White. It contends, however, that Mr. Hill was not convicted of four counts of armed criminal action for that one assault because the jury instructions for each of the armed criminal action verdict directors reference a separate assault count. The verdict directors and forms, however, were inconsistent with the indictment and each other. For example, in the indictment, Count 1 relates to the shooting of Officer White, Count 3 relates to Officer Colvin, Count 5 relates to Officer Bradley, and Count 7 relates to Officer Walker. While the State apparently wishes the reader of the indictment to assume that the armed criminal action charged in Count 4 corresponded to the assault charged in Count 3 (Officer Colvin), the verdict director that referred to Count 4 of armed criminal action actually corresponded with the assault of Officer Bradley, which was alleged in Count 5. And the verdict director for the armed criminal action referred to as Count 6, which presumably the State would relate to the assault in Count 5 (Officer Bradley), corresponded with the assault of Officer Colvin, which was alleged in Count 3.

The verdict forms further add confusion because the form for Count 4 stated that the jury found Mr. Hill guilty of armed criminal action as submitted in instruction no. 11; however, instruction no. 11 submitted Count 6. Likewise, the verdict form for Count 6 stated that the jury found Mr. Hill guilty of armed criminal action as submitted in instruction no. 14; however, instruction no. 14 submitted Count four. Given these discrepancies, the verdict directors and forms did not clarify what the indictment intended to charge and, in any case, were not part of the judgment reflecting the conviction. While a reader might assume from the indictment and judgment that the State intended to charge Mr. Hill with four separate counts of armed criminal action related to the shootings of the four separate victims, as found in *Frances,* "we find it unacceptable to simply ignore the appearance that the defendant's double jeopardy rights have been violated." 51 S.W.3d at 23. The point is granted, and the convictions for armed criminal action and consecutive sentences on Counts 4, 6, and 8 are vacated.

## II. Ineffective Assistance of Counsel Claims

In points two and three, Mr. Hill claims that the motion court clearly erred in denying his postconviction relief claim without an evidentiary hearing. He contends that he was denied effective assistance of counsel when counsel failed to call a witness to testify and to request the submission of instructions on lesser included offenses.

An evidentiary hearing shall not be held if "the motion and files and records of the case conclusively show that the movant is entitled to no relief." Rule 29.15(h). A trial court will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief. *Morrow,* 21 S.W.3d at 822. An evidentiary hearing is required only if

(1) the motion alleges facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the files and records in the case; and (3) the matters complained of resulted in prejudice. *Id.* at 822–23.

To obtain an evidentiary hearing for claims related to ineffective assistance of counsel, a movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was prejudiced thereby. *Id.*; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, the facts alleged must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Morrow,* 21 S.W.3d at 822.

### A. Failure to Call a Witness

█  Mr. Hill first claims that he was denied effective assistance of counsel when counsel failed to call Erica Page, the tenant of the apartment in which he was found and arrested, to testify at the suppression hearing. Mr. Hill sought to suppress items seized and statements made during the search of the apartment arguing that the search was illegal because the police did not have a valid warrant and did not obtain valid consent. Mr. Hill asserts that he alleged sufficient facts to warrant an evidentiary hearing on this claim.

█  To warrant a hearing on a claim of ineffective assistance of counsel for failure to call a witness, a movant must allege: (1) the identity of the witness; (2) what the witness' testimony would have been; (3) that counsel was informed of the witness' existence; (4) whether the witness was available to testify; and (5) that the testimony would have provided the movant

with a viable defense. *Wilkes v. State,* 82 S.W.3d 925, 928 (Mo. banc 2002).

In his motion, he claims to have repeatedly asked his attorney to call Ms. Page as a witness, that his attorney was aware of Ms. Page's existence and whereabouts, and that she was available to testify. He also alleged that Ms. Page would have testified that he had her permission to stay in her apartment as an overnight guest the night of his arrest. Mr. Hill claimed that such testimony would have established that he had a legitimate expectation of privacy in Ms. Page's back bedroom where he was found and, thus, the evidence found in the search of the bedroom, an assault rifle and ammunition, would have been suppressed, and the outcome of the trial would have been different.

Mr. Hill's motion for postconviction relief failed to show that Ms. Page's testimony would have provided him with a viable defense. Even if Mr. Hill established that he had a legitimate expectation of privacy in the back bedroom of the apartment, the record reveals that the conduct of the police officers was not illegal.

█  The first issue is whether Ms. Moore had authority to permit the police officers into the apartment. The State bears the burden of proving by a preponderance of the evidence that the consenting party possessed authority to grant her consent. *United States v. Clark,* 234 F.Supp.2d 471, 476 (D.N.J.2002). "If a 'man of reasonable caution in the belief' would believe that the consenting party had authority over the premises searched, the search is valid." *Id.* When the State seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant. *United States v. Turbyfill,* 525 F.2d 57, 59 (8th Cir.1975)(quoting *United*

States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). The State may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. Id. (quoting Matlock, 415 U.S. at 170, 94 S.Ct. 988). The existence of common authority rests on "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Id. (quoting Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. 988).

In State v. Wise, 879 S.W.2d 494, 504 (Mo. banc 1994), cert. denied, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995), the Missouri Supreme Court held that an overnight guest has a legitimate expectation of privacy in her host's home and, thus, has standing to assert Fourth Amendment violations. Here, Ms. Moore was an overnight guest in Ms. Page's apartment. She, therefore, had a reasonable expectation of privacy in the apartment. Ms. Moore also had authority to consent to the entry of the police officers into the apartment. See Clark, 234 F.Supp.2d at 477 (overnight guest had a reasonable expectation of privacy in searched hotel room and had authority to consent to search of hotel room).

The next issue is whether the officers lawfully searched the back bedroom once they entered the apartment. An entry into and search of a home without a warrant are presumptively unreasonable under the Fourth Amendment unless the police action falls within certain carefully delineated exceptions. State v. Mahsman, 157 S.W.3d 245, 249 (Mo.App.

E.D.2004); State v. Kimberley, 103 S.W.3d 850, 856 (Mo.App. W.D.2003)(quoting State v. Varvil, 686 S.W.2d 507, 512 (Mo.App. E.D.1985)). One exception involves the existence of exigent circumstances. Id. Exigent circumstances exist if the time needed to obtain a warrant would endanger life, allow the suspect to escape, or risk destruction of evidence. Mahsman, 157 S.W.3d at 249; Kimberley, 103 S.W.3d at 856 (quoting State v. Wright, 30 S.W.3d 906, 910 (Mo.App. E.D.2000)). In determining whether circumstances are exigent, the following factors are relevant:

(1) the gravity of the offense; (2) reasonable belief by the police the suspect is armed; (3) more than minimal probable cause to believe the suspect committed the crime; (4) strong reason to believe the suspect is in the premises in question; (5) likelihood of escape if prompt action is not taken; and (6) the entry is made peaceably.

Kimberley, 103 S.W.3d at 856 (quoting State v. McCullum, 63 S.W.3d 242, 256 (Mo.App. S.D.2001)).

In this case, the tactical response team of the Kansas City, Missouri, Police Department was dispatched to the apartment building after four officers in a patrol car were fired upon with an assault rifle. Two of the officers were shot, one in the head and one in the neck. As discussed, the officers lawfully entered the apartment where Mr. Hill was ultimately found with the consent of Ms. Moore. Ms. Moore then told the officers that the only people in the apartment were herself, the young man in the living room, and the tenant and her children, who were in the first bedroom, implicitly directing the officers to the bedroom. She "emphatically" denied that anyone else was in the apartment. As the officers moved to the first bedroom to ask the tenant's permission to search the apartment, they saw movement in the back

bedroom, which was supposed to be unoccupied based on Ms. Moore's statements. Concerned for their own safety and for the safety of the occupants of the apartment, the officers moved to the back bedroom where they found Mr. Hill and Mr. Vaughn and their weapons. Given that the shooting suspect was at large and armed with an assault rifle and Ms. Moore's statement that no one was in the back bedroom, the officers' belief that the safety of everyone in the apartment was in jeopardy was reasonable. These facts constituted exigent circumstances justifying the officers' warrantless entry into the back bedroom of the apartment, and the seizure of the weapons found in the back bedroom was proper.

Ms. Page's testimony would not have provided Mr. Hill with a viable defense. The motion court did not clearly err in denying this claim of ineffective assistance of counsel. Point two is denied.

### B. Submission of Lesser Included Offense Instruction

In point three, Mr. Hill alleges that counsel was ineffective in failing to request the submission of instructions on the lesser included offenses of assault in the second degree and assault of a law enforcement officer in the second degree. Initially, the State asserts that Mr. Hill waived his claim regarding submission of second-degree assault. In his motion for postconviction relief, Mr. Hill alleged that counsel was ineffective for failing to request instructions for the lesser included offenses of assault of a law enforcement officer in the second degree and assault of a law enforcement officer in the third degree. Mr. Hill did not allege that counsel was ineffective for failing to request an instruction for assault in the second degree. Under Rule 29.15, a movant waives all claims that are not raised in a timely filed pleading. Rule 29.15(d); *Barnett v. State,* 103 S.W.3d 765, 773 (Mo. banc 2003), *cert. denied,* 540 U.S. 862, 124 S.Ct. 172, 157 L.Ed.2d 114 (2003). Mr. Hill failed to preserve the claim regarding submission of assault in the second degree by not raising it in his postconviction relief motion. The claim is, therefore, procedurally barred. *Barnett,* 103 S.W.3d at 773. Mr. Hill's claim regarding submission of assault of a law enforcement officer in the second degree, however, is reviewable.

A trial court is not required to instruct on a lesser included offense unless the jury has a basis to (1) acquit of the offense charged, and (2) convict of the lesser offense. § 556.046.2, RSMo 2000; *State v. Pond,* 131 S.W.3d 792, 793 (Mo. banc 2004).

> In order for there to be a basis for an acquittal of the greater offense, there must be some evidence that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser.

*Pond,* 131 S.W.3d at 794 (quoting *State v. Barnard,* 972 S.W.2d 462, 466 (Mo.App. W.D.1998)). Section 556.046.2 requires only a basis for the jury to acquit on the greater offense; it does not require the defendant to produce affirmative evidence as to the lack of an essential element of the greater offense. *Id.*

A person commits the crime of assault of a law enforcement officer in the first degree if he "attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer." § 565.081.1, RSMo 2000. "Serious physical injury" is "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6), RSMo 2000. A person commits that crime of assault of a

law enforcement officer in the second degree if he "knowingly causes or attempts to cause physical injury to a law enforcement officer by means of a deadly weapon or dangerous instrument." § 565.082.1(1), RSMo 2000.

■ Mr. Hill was not entitled to an evidentiary hearing on this claim because he failed to allege facts in his Rule 29.15 motion warranting relief. Specifically, Mr. Hill failed to plead facts that would have provided a basis for acquittal of first-degree assault of a law enforcement officer. In his motion, Mr. Hill alleged the following facts in support of this claim:

> At trial the State presented evidence that Mr. Hill and friends were shooting guns on New Years Eve, 1999, when they saw a police car [drive] by. According to one of the friends, Mr. Hill said that if the police rode back by again, he was going to shoot them. In the police car were four officers, Officer Colvin, who was driving, and Officers Walker, White, and Bradley. When the patrol car passed by again, Mr. Hill fired at the car, saying afterward, "I think I hit them." Officer Walker was shot in the head and Officer Colvin was shot in the neck.

He concluded that, based on the evidence, the jury could have found that he did not intend to kill or cause serious physical injury but only intended to cause physical injury. The facts alleged by Mr. Hill would not have supported an acquittal of assault of a law enforcement officer in the first degree. They did not support an inference that Mr. Hill only intended to cause physical injury as opposed to death or serious physical injury. Rather, the facts alleged by Mr. Hill established that he intended to kill or cause serious physical injury. He fired his assault rifle thirty times into a police vehicle in which four police officers were riding. Shooting several times into an occupied car shows intent to cause death or serious physical injury. *State v. Theus*, 967 S.W.2d 234, 239 (Mo.App. W.D.1998)(quoting *State v. Smith*, 747 S.W.2d 678, 680 (Mo.App. S.D. 1988)); *State v. Jones*, 921 S.W.2d 28, 35 (Mo.App. W.D.1996). Mr. Hill would not have been entitled to an instruction for the lesser included offense of second-degree assault of a law enforcement officer. Counsel is not deemed ineffective for failing to make a meritless objection. *Middleton v. State*, 103 S.W.3d 726, 741 (Mo. banc 2003). The motion court did not clearly err in denying this claim of ineffective assistance of counsel without an evidentiary hearing. Point three is denied.

Mr. Hill's convictions and sentences for armed criminal action on Counts 4, 6, and 8 are vacated. His convictions and sentences on Counts 1, 2, 3, 5, and 7 remain unchanged and in effect. The motion court's denial of Mr. Hill's Rule 29.15 motion alleging ineffective assistance of counsel is affirmed.

BRECKENRIDGE and SMART, JJ., concur.