

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108016 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Pike County |
| v. | ) | 18PI-CR00202 |
| | ) | |
| HARLEY J. AHART, JR., | ) | Honorable Milan C. Berry |
| | ) | |
| Appellant. | ) | FILED:  October 20, 2020 |

Opinion

Harley J. Ahart, Jr. ("Ahart") appeals from the judgment and sentence of conviction after a bench trial finding him guilty of one count of tampering in the second degree.  In his sole point on appeal, Ahart challenges the sufficiency of the evidence underlying his conviction.  We reverse his conviction, enter a conviction for the lesser-included offense of attempted tampering in the second degree, and remand for sentencing on this Class B misdemeanor conviction.

Factual and Procedural Background[1]

The State charged Ahart with one count of tampering in the second degree in violation of Section 569.090,[2] a Class A misdemeanor, arising from the following events.

---

[1] The facts of the case are undisputed and there is no contention that Ahart acted other than as outlined by the testimony at trial.

[2] All statutory references are to the Revised Statutes of Missouri (cum. supp. 2018), unless otherwise indicated.

On August 15, 2018, Ahart's former spouse, Jennifer Ahart ("Victim"), and her current partner, James Turner ("Turner"), were eating at a restaurant in Bowling Green, Missouri. At the time of the offense, Ahart lived in Louisiana, Missouri, and Victim lived in Bowling Green. Victim and Turner were sitting by the window when they observed Ahart drive into the parking lot of the restaurant. Turner called the police when he saw Ahart arrive. Victim and Turner watched Ahart exit the truck he was driving, walk around and look at Victim's parked vehicle, retrieve a soda can from the bed of his truck, and place the soda can underneath Victim's vehicle in line with her tire(s). The soda can appeared to Victim to be "crunched-up." Ahart returned to the truck and drove away.

When law enforcement arrived at the restaurant in response to Turner's call, an officer retrieved the soda can from in front of the rear driver's side tire of Victim's vehicle. The soda can was a crushed twelve-ounce can with three one-and-a-half-inch nails protruding from it. Turner testified that no one else approached Victim's vehicle between the times Ahart and law enforcement arrived. Turner also testified that the soda can was not on the ground in the parking lot when he and Victim arrived at the restaurant. No evidence was adduced that Ahart or the soda can made contact with or damaged Victim's vehicle.

At the close of the State's evidence and at the close of all the evidence, Ahart made an oral motion for judgment of acquittal, which the trial court denied. The trial court took the matter under advisement and requested post-trial briefing from the parties on two specific questions: (1) does second-degree tampering necessitate damage to the vehicle; and (2) may the trial court find the defendant guilty of the lesser-included offense of attempted tampering rather than the State-submitted charge of second-degree tampering. After the bench trial and submission of the parties' post-trial briefs, the trial court found Ahart guilty of the Class A

misdemeanor of tampering in the second degree and sentenced him to fifteen (15) days in jail, with credit for the thirteen days he had served. This appeal follows.

## Standard of Review

We review a challenge to the sufficiency of the evidence supporting a criminal conviction for whether there was sufficient evidence from which a reasonable trier of fact could have found the defendant guilty of the elements of the offense beyond a reasonable doubt. *State v. Conner*, 583 S.W.3d 102, 107 (Mo. App. E.D. 2019); *State v. Ransburg*, 504 S.W.3d 721, 722 (Mo. banc 2016) (applying standard of review in court-tried case). We consider all the evidence and reasonable inferences therefrom in the light most favorable to the verdict, and disregard contrary evidence and inferences. *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016). However, we will not supply missing evidence or grant the State any unreasonable, speculative, or forced inferences. *Id.*

## Discussion

In his sole point on appeal, Ahart argues the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to find him guilty of tampering in the second degree. Ahart contends that he did not complete any act of tampering and that, at most, he can be found guilty of attempted second-degree tampering. We agree.

*a. Tampering in the second degree*

Section 569.090 provides, in relevant part, that an individual commits the offense of tampering in the second degree if he or she "[t]ampers with property of another for the purpose of causing substantial inconvenience to that person or to another." Section 569.090.1(1).[3] Thus,

---

[3] Section 569.090 outlines the four following ways to commit tampering in the second degree, of which only (1) applies to this case:
    (1) Tampering with property of another for the purpose of causing substantial inconvenience to that person or to another; or

to find an individual guilty of second-degree tampering, the evidence must show two essential elements: that he or she (1) tampered with another's property and (2) did so for the purpose of causing substantial inconvenience. Section 569.090.1(1); *see also McKee v. State*, 336 S.W.3d 151, 154 (Mo. App. E.D. 2011). As defined in the statute, "[t]o tamper" means "to interfere with something improperly, to meddle with it, displace it, make unwarranted alterations in its existing condition, or to deprive, temporarily, the owner or possessor of that thing." Section 569.010(3). To act with purpose means it is the defendant's "conscious object to engage in that conduct or to cause that result." Section 562.016.2. "[I]ntent is rarely susceptible to proof by direct evidence and is most often inferred circumstantially," including from the defendant's conduct before the act and from the act itself. *Ransburg*, 504 S.W.3d at 724 (citation omitted).

Here, we find that a reasonable trier of fact could have found from the evidence that Ahart acted for the purpose of causing substantial inconvenience to Victim. The evidence adduced showed that Ahart drove from another town to the town where Victim lived, approached Victim's vehicle and closely observed it, retrieved a soda can—which had been altered so that nails protruded from it—from his truck, and placed the altered soda can underneath Victim's vehicle in the path of its tire(s). It is a reasonable inference from this evidence that Ahart intended to improperly interfere with Victim's vehicle, including causing the altered soda can to puncture her tires. *See State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993) (person presumed to intend "natural and probable consequences" of his or her acts). It is further reasonable to infer that, through this action, Ahart sought to cause substantial inconvenience to

(2) Unlawfully riding in or upon another's automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle; or
(3) Tampering or making connection with property of a utility; or
(4) Tampering with, or causing to be tampered with, any meter or other property of an electric, gas, steam or water utility, the effect of which tampering is either:
    (a) To prevent the proper measuring of electric, gas, steam or water service; or
    (b) To permit the diversion of any electric, gas, steam or water service.

Victim by impeding the normal use of her vehicle or through another adverse impact the soda can could cause. *See Kelly v. Bass Pro Outdoor World, LLC*, 245 S.W.3d 841, 849 n.4 (Mo. App. E.D. 2007) (stating evidence defendant damaged vehicle "with his prolonged use of the slim jim and his kicking the door shut" could support substantial inconvenience element of second-degree tampering).

Given our conclusion that a reasonable trier of fact could find from the evidence that Ahart acted with the requisite intent, the issue here is whether Ahart's act of placing the altered soda can underneath Victim's vehicle constituted "tampering" with her property.

Under the statutory definition, "tampering" means "to interfere with something improperly, to meddle with it, displace it, make unwarranted alterations in its existing condition, or to deprive, temporarily, the owner or possessor of that thing." Section 569.010(3). In this case, there is no tenable allegation that Ahart's conduct displaced Victim's vehicle, made unwarranted alterations to Victim's vehicle, or temporarily deprived Victim of her vehicle. As such, the question becomes whether Ahart's conduct improperly interfered or meddled with Victim's property. *See* Section 569.010(3). Webster's Dictionary defines "meddle" as "to interest oneself in what is not one's concern: interfere without right or propriety." *Meddle*, Webster's Dictionary (3d ed. 2002). Webster's Dictionary defines "interfere" as "to enter into or take a part in the concerns of others … to interpose in a way that hinders or impedes: come into collision or be in opposition …." *Interfere*, Webster's Dictionary (3d ed. 2002); *accord Bennett v. St. Louis Cty., Mo.*, 542 S.W.3d 392, 401 (Mo. App. E.D. 2017) (citing definition of interfere).

The Missouri Supreme Court has previously noted that "[t]o tamper with a motor vehicle may be many things. Some may be serious, some clearly not serious; some major and some minor." *State v. Hale*, 463 S.W.2d 869, 872 (Mo. 1971) (internal quotations and citation

5

omitted). Prior cases finding a conviction for tampering in relation to a motor vehicle under Missouri statutes[4] have all included contact with or resulted in an effect on the condition or use of the vehicle, however minimal. *See, e.g.*, *id.* at 872–73 (attaching cable to vehicle in attempt to haul vehicle away without owner's consent); *State v. McLarty*, 414 S.W.2d 315, 318–19 (Mo. 1967) (partially disconnecting air conditioner); *State v. Wood*, 266 S.W.2d 632, 635 (Mo. 1954) (removing gasoline and license plate tab); *State v. Ridinger*, 266 S.W.2d 626, 631 (Mo. 1954) (removing wheel and tire); *State v. Tate*, 509 S.W.2d 800, 801 (Mo. App. 1974) (inserting pick into ignition system of vehicle).

Guided by the above definitions and Missouri precedent, we conclude that tampering with property requires some contact with the property, initiated by the defendant, or some effect on the condition or use of the property, however minimal. This is not to say that damage must occur to the property, as this Court has previously noted that "one can tamper with another's property without damaging it."[5] *State v. Orton*, 178 S.W.3d 589, 592 (Mo. App. E.D. 2005). However, to constitute tampering, there must be some contact having as its likely result an effect on the property or its use. Indeed, we have found no cases—and the State has pointed us to no cases—where tampering has been found without some contact with or effect on the property itself.

This understanding of tampering aligns with Missouri courts' and other state courts' interpretation of "tampering" in the context of other criminal statutes, which generally construe tampering to prohibit behavior that results in an appreciable change or alteration to the condition

---

[4] This does not include those cases where the owner was temporarily deprived of her or his property or those where mere presence in or use of another's motor vehicle constitutes tampering. Neither of those factual situations apply to the case here.

[5] The *Orton* court included this statement without further explanation as to what types of non-damaging actions could constitute "tampering" under Missouri statutes. *See State v. Orton*, 178 S.W.3d 589, 592 (Mo. App. E.D. 2005).

or use of property.  *See, e.g.*, *State v. Harlston*, 565 S.W.2d 773, 779 (Mo. App. 1978) (regarding tampering with voting machine statute, "'tamper,' when used in a criminal statute has the limited meaning of improper interference as for the purpose of alteration, and to make objectionable or unauthorized changes") (internal quotations and citation omitted); *Oregon v. Schoen*, 228 P.3d 1207, 1210–11 (Or. 2010) (defining tampering as conduct that alters, rearranges, or changes property, and interference as action hindering or frustrating use or purpose of property, and construing tampering statute as requiring unauthorized contact and "some kind of adverse effect on the property or its use"); *In re Welfare of W.A.H.*, 642 N.W.2d 41, 46 (Minn. Ct. App. 2002) (analyzing other states' tampering statutes and concluding tampering "requires that an individual engage in conduct that results in some degree of change or alteration to, or substantial interference with a vehicle").

We decline in this case to define the outer bounds of what constitutes "tampering," given that it depends on the specific factual circumstances of each case.  As aptly noted by the Oregon Supreme Court in an opinion construing their tampering statute,

> What constitutes tampering with property for purposes of [the statute] may depend on the nature of the property: merely entering a 'clean room' at a manufacturing facility for silicon wafers or touching a valuable painting with one's finger might constitute tampering, while the same conduct with respect to other property would not.

*Schoen*, 228 P.3d at 1212.  We find, simply, that the specific conduct in this case does not constitute tampering, where no effect on the vehicle's condition or use occurred and Ahart did not cause even minimal contact with the vehicle.[6]  Given this understanding of tampering, we conclude the evidence here was insufficient to support finding Ahart guilty of second-degree

---

[6] As such, we reject the State's argument that Ahart meddled with Victim's property when he "became interested in the vehicle" when it was not his concern, and that Ahart interfered with Victim's property when he "placed the can under the tire" because "the vehicle could not be moved in its usual course unless and until the can was removed."

tampering. The evidence adduced at trial showed that neither Ahart nor the altered soda can made contact with Victim's vehicle, and that neither the condition nor use of Victim's vehicle was impacted by Ahart's conduct. The State failed to produce sufficient evidence from which the trial court could have found Ahart guilty beyond a reasonable doubt of second-degree tampering, and therefore the trial court erred in overruling Ahart's motion for judgment of acquittal and in sentencing him on this conviction.

However, both Ahart and the State asserted in their post-trial briefing that the evidence adduced instead supported a conviction for attempted second-degree tampering. "Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." *O'Brien*, 857 S.W.2d at 220. "An attempt is a lesser-included offense of completing a crime." *Conner*, 583 S.W.3d at 108. We thus address whether the evidence was sufficient for a reasonable trier of fact to find Ahart guilty of attempted tampering.

    *b. Attempted tampering in the second degree*

Under the general attempt statute, an attempt to commit a criminal offense occurs "if, with the purpose of committing the offense, a person performs any act which is a substantial step towards the commission of the offense." Section 562.012.1. To find an individual guilty of such an attempt, the individual must thus have both (1) an intent to commit the underlying offense and (2) have taken a substantial step toward commission of that offense. *Lammers*, 479 S.W.3d at 632; *Conner*, 583 S.W.3d at 108–09. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

Section 562.012.1. "What act or conduct will constitute a substantial step will depend on the facts of the particular case." *Conner*, 583 S.W.3d at 108 (citation omitted). Such an act "need not be the ultimate step toward, or the last possible act in the consummation of the crime attempted." *State v. Bjorgo*, 571 S.W.3d 651, 657 (Mo. App. W.D. 2019) (citation omitted).

Here, a reasonable trier of fact could have found Ahart both had the intent to commit and performed a substantial step toward committing second-degree tampering. As discussed *supra*, a reasonable trier of fact could infer from the evidence that Ahart intended to tamper with Victim's vehicle and acted for the purpose of causing her substantial inconvenience. Similarly, a reasonable trier of fact could find that the evidence demonstrated Ahart's firm purpose to tamper with Victim's property, in that Ahart purposefully drove from the town in which he lived to the place where Victim's vehicle was located, investigated Victim's vehicle, and placed the altered soda can underneath Victim's vehicle and in the path of her tire(s). This conduct constituted a substantial step toward committing tampering in the second degree. *Cf. Lammers*, 479 S.W.3d at 633–34 (buying assault rifles and engaging in target practice were substantial steps toward committing first-degree assault); *State v. Kusgen*, 178 S.W.3d 595, 599–600 (Mo. App. W.D. 2005) (surreptitiously approaching another's property with tools that could be used to steal ammonia was substantial step toward stealing).

Given the above facts and inferences, a reasonable trier of fact could have found Ahart guilty of committing attempted tampering in the second degree. The general attempt statute provides that, "[u]nless otherwise set forth in the statute creating the offense," an attempt to commit that offense "shall be classified one step lower than the class provided for the felony or misdemeanor in the statute creating the offense." Section 561.012.3. The statute providing for the offense of tampering in the second degree does not outline an offense of attempted tampering

9

in the second degree. *See* Section 569.090. Therefore, attempted tampering in the second degree "shall be classified one step lower than the class provided for the felony or misdemeanor in the statute creating the offense." *See* Section 561.012.3. As Section 569.090 provides that tampering in the second degree is a Class A misdemeanor, the attempted tampering of which Ahart is guilty is properly classified as a Class B misdemeanor. *See* Sections 569.090, 561.012.3. The sentencing range for a Class A misdemeanor is a term of imprisonment not to exceed one year; the sentencing range for a Class B misdemeanor is a term of imprisonment not to exceed six months. Section 558.011.1. Because the statutory range of punishment for these two offenses differ, we remand this case for resentencing. *See Conner*, 583 S.W.3d at 110 ("when an appellate court reverses a conviction and enters a new conviction, the case will be remanded for resentencing" unless the statutory range of punishment for an offense and for an attempt of that offense are the same).

We therefore reverse Ahart's conviction, enter a conviction for attempted tampering in the second degree, and remand for resentencing on the attempt conviction.

Point I is granted.

## Conclusion

The State failed to produce sufficient evidence from which the trial court could have found Ahart guilty beyond a reasonable doubt of tampering in the second degree, and therefore the trial court erred in overruling Ahart's motion for judgment of acquittal and in sentencing him on that conviction. However, the State did produce sufficient evidence from which Ahart could have been found guilty of the lesser-included offense of attempted tampering in the second degree.

10

We reverse Ahart's conviction for tampering in the second degree and enter a conviction for the Class B misdemeanor of attempted tampering in the second degree. We remand to the trial court for resentencing on this conviction.

_____
Robin Ransom, Presiding Judge

Sherri B. Sullivan, J., and Lisa P. Page, J., concur.